UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| MIGUEL ARELLANO, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:11-cv-804 |
| v. | ) ) ) | Honorable Joseph G. Scoville |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | **OPINION** |
| Defendant. | ) ) | |

       This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On August 1, 2007, plaintiff filed his applications for benefits alleging a November 3, 2005 onset of disability.[1] His claims for DIB and SSI benefits were denied on initial review. On January 4, 2010, plaintiff received a hearing before an ALJ, at which he was represented by counsel. (A.R. 28-57). On February 12, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 11-19). The Appeals Council denied review on June 17, 2011 (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2007 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 9). Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "erroneously failed to give appropriate weight to the opinions of [] treating sources." (Statement of Issue, Plf. Brief at 2, docket # 10). The court finds that plaintiff's argument does not provide any basis for disturbing the Commissioner's decision. A judgment will be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see*

*McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on November 3, 2005, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 13). Plaintiff had not engaged in substantial gainful activity on or after November 3, 2005. (A.R. 13). Plaintiff had the following severe impairments: anti-social personality disorder, mood disorder, anxiety disorder, substance abuse disorder, and asthma. (A.R. 13). The ALJ found that plaintiff did not have an impairment or combination of impairments which

met or equaled the requirements of the listing of impairments. (A.R. 14). The ALJ found that plaintiff retained the residual functional capacity for a limited range of medium work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: avoiding exposure to pulmonary irritants (fumes/odors/dusts/gasses/poor ventilation); limited to simple, routine and repetitive tasks in a work environment free of fast paced production requirements; not required to make more than simple work-related decisions with few, if any, workplace changes; only occasional interaction with the public, co-workers and supervisors; taking into account a seriously limited ability to deal with work stressors, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability.

(A.R. 15-16). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (A.R. 16-18). Plaintiff was unable to perform his past relevant work. (A.R. 18). Plaintiff was 36-years-old as of his alleged onset of disability, and 41-years-old as of the date of the ALJ's decision. Thus, he was classified as a younger individual at all times relevant to his claims for DIB and SSI benefits. (A.R. 18). Plaintiff has a limited education and is able to communicate in English. (A.R. 18). The transferability of work skills was not material to a disability determination. (A.R. 18). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately 6,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 52-54). The ALJ held that this constituted a significant number of jobs. Using Rule 203.26 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2] (A.R. 18-19).

---

[2]Plaintiff was using methamphetamine and abusing alcohol during the period he claims to have been disabled. (A.R. 51, 263-64, 278-79, 315, 318, 336, 394, 471, 492). He has a substantial substance abuse history. (A.R. 249-52, 259, 492, 499, 502, 534). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also*

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "erroneously failed to give appropriate weight" to the opinions of three treating sources: Jeffrey Stowitts, D.O., Physician's Assistant Kristin Karel, and David Lyon, D.O. (Plf. Brief at 2-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he

---

*Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

Further, plaintiff's medical records reveal that he has served at least three prison terms. (A.R. 250, 479). He is not eligible for DIB or SSI benefits for any month he was confined to jail or prison. 42 U.S.C. §§ 402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325.

opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

1. Physician's Assistant Karel and Dr. Stowitts

Plaintiff argues that the ALJ "erroneously failed to give appropriate weight to the opinions of Dr. Jeffrey Stowitts D.O. and Kristin Karel PA-C, the claimant's primary treating sources for his physical impairments since 2002." (Plf. Brief at 2). He fails to identify any specific opinion expressed by these individuals that failed to receive appropriate weight. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Assuming that the issue had not been waived, it is meritless. Plaintiff failed to provide evidence of treatment by Dr. Stowitts or Ms. Karel during the period at issue: November 3, 2005, through February 12, 2010. (A.R. 283-409). *See Torres v. Commissioner*, No. 11-3981, 2012 WL 3089334, at * 4 n.2 (6th Cir. July 12, 2012). The only record of treatment by Dr. Stowitts is a progress note dated March 17, 2003. (A.R. 295). Plaintiff claimed a work-related groin injury. Dr. Stowitts offered a diagnosis of a sprain or strain. He recommended that plaintiff take over-the-counter Tylenol or Motrin and return to his normal work duties the following week. (*Id.*).

The record contains a letter addressed to Dr. Stowitts from Neurosurgeon Steven Klafeta, M.D., but the letter does not support plaintiff's claims for DIB and SSI benefits. (A.R. 406). Dr. Klafeta examined plaintiff on November 12, 2004. (A.R. 406). He found that plaintiff had degenerative disc disease at L-5-S1 with some "mild" cental canal stenosis at L4-5. There were no disc herniations or compressions. "There [was] no significant neuroforaminal narrowing." (A.R. 408). Plaintiff's gait was normal and his motor strength was 5/5 in all muscle groups. (*Id.*). Dr. Klafeta "cleared" plaintiff to return to work at the heavy exertional level. (A.R. 407-08).

Ms. Karel is a physician's assistant. A physician's assistant is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no treating physician's assistant rule and the opinion of a physician's assistant is not entitled to any particular weight. *See Weaver v. Astrue*, 353 F. App'x 151, 154-55 (2d Cir. 2009). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06–3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, 416.912). This is not a demanding standard. It was easily met here. (*See* A.R. 14).

If anything, Ms. Karel's records lend additional support to the ALJ's decision finding that plaintiff was not disabled.  On September 4, 2003, plaintiff told Ms. Karel that he had been driving on August 28, 2003, and had been involved in a head-on collision with another car.  He did not go to the emergency room on the date of the accident.  He did go the next day, and x-rays revealed a sternal fracture.  Plaintiff was treated and released and advised to follow-up with Ms. Karel. (A.R. 292, 390).  On October 6, 2003, plaintiff reported feeling much less pain in his sternum and in his neck.  He planned to return to work the following week.  (A.R. 289).

On November 9, 2004, Ms. Karel noted that plaintiff's work involved exerting up to 100 pounds of force occasionally and 50 pounds frequently.  She stated that plaintiff was able to perform this work.  (A.R. 283).  The ALJ gave plaintiff the benefit of a doubt and restricted him to work at the medium exertion level.  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

2.  Dr. Lyon

Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Lyon's opinion that plaintiff was unable to work. (Plf. Brief at 3-4) (citing A.R. 430-32).  An examination of Dr. Lyon's questionnaire responses reveals that he never offered an opinion that plaintiff was disabled, and even if he had done so, the opinion would be entitled to no weight because the issue of whether a claimant is disabled is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.923(d)(1), (3); *Bass v. McMahon*, 499 F.3d at 511.  "[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician." *Sims v. Commissioner*, 406 F. App'x at 980 n.1.

The ALJ noted that when plaintiff first sought psychological counseling in June 2005, he was abusing methamphetamines on a daily basis. (A.R. 17). Plaintiff did not seek psychological counseling for more than four years, and when he did so, he lied about his drug use:

> The claimant did not again seek treatment for any psychiatric problems until July 2009. He first appeared for counseling because his attorney told him to (Exhibit 6F/28)[A.R. 275]. Subsequently, he was involuntarily committed to a hospital (Exhibit 7F)[A.R. 281-82]. He denied substance abuse for "several years" (Exhibit 6F/28)[A.R. 275], which was untrue (Exhibit 20F/4)[A.R. 492]. He improved rapidly when placed on Seroquel (Exhibit 10F)[A.R. 421]. Again, treatment for substance abuse was recommended (ibid). At discharge[], it was noted his anxiety might be related to caffeine (Exhibit 20F/14)[A.R. 502].
>
> During his treatment at this time, the claimant expressed some anger based on the fact that others obtained benefits for disability while he could not (Exhibit 6F/1)[A.R. 248]. In spite of pain complaints, he also noted that he was dancing with his wife for recreation (ibid, at 2)[A.R. 249]. The staff noted that he was lying "many times" during his evaluation (id, at 5)[A.R. 252].
>
> A month later, the claimant was again re-committed for psychiatric treatment (Exhibit 14F)[A.R. 428-29]. He admitted to drinking and smoking marijuana (Exhibit 19F/9)[A.R. 478]. At discharge, he was denying depression, anxiety or irritability (ibid, at 1)[A.R. 470]. Subsequent counseling noted that the claimant did not appear to be psychotic (Exhibit 12F/27)[A.R. 461] and at times his presentation was either slightly dramatic or "put on" (ibid, at 21, 24)[A.R. 455, 458]. Again, he also typically appeared well-groomed and with good hygiene (Exhibits 9F/8; 20F/4; 1[7]F)[A.R. 417, 435, 492]. The doctor ultimately concluded that some of the claimant's symptoms were volitional and he was more an anti-social personality than someone suffering from an Axis I (mood disorder/psychotic) diagnosis (id, at 1, 14)[A.R. 435, 448].

(A.R. 17). It was against this backdrop that the ALJ considered Dr. Lyon's "Medical Assessment of Ability to Do Work-related Activities (Mental)." (A.R. 430-32). Dr. Lyon first treated plaintiff on August 18, 2009, more than four years after plaintiff's alleged onset of disability. (A.R. 432). On September 8, 2009, he rated plaintiff's ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability as "poor." (A.R. 431-32). He wrote,

"Miguel is a complex, in that he likely has a mental disorder/mood disorder, but also has [illegible] personality disorder and [illegible] drug addiction." (A.R. 431).

On October 20, 2009, plaintiff denied any current drug or alcohol use. Dr. Lyon wrote: "I do feel addiction treatment would be very beneficial, but he's denying that." (A.R. 454).

On November 17, 2009, Dr. Lyon noted that plaintiff's mood was good and he did not display any manic or psychotic symptoms. (A.R. 435). His thoughts were organized and he had no suicidal or homicidal ideations. (A.R. 435). Dr. Lyon offered the following diagnosis:

> Axis I:
> 1. 296.90    Mood Disorder NOS
> 2. R/O Psychotic Disorder NOS
> 3. 300.00    Anxiety Disorder NOS
> 4. 304.40    Methamphetamine Dependence, in partial remission
> 5. 303.90    Alcohol Dependence, in partial remission
> 6. R/O Polysubstance Dependence
> 7. V15.81    Noncompliance with treatment
>
> Axis II:    301.7 Antisocial Personality Disorder.

(A.R. 435). Dr. Lyon made a candid observation that plaintiff may have "some secondary gain issues." (A.R. 436). Plaintiff continued to deny current use of drugs or alcohol. Dr. Lyon expressed concern that plaintiff did not want to participate in addiction treatment. (A.R. 436). On December 2, 2009, Dr. Lyon wrote a one-sentence letter: "I have reviewed the Medical Assessment of Ability to do Work-Related Activities (Mental) PRTF form completed on September 8, 2009 and believe Mr. Arellano's limitations remain the same." (A.R. 466).

The ALJ did not reject Dr. Lyon's opinions. He incorporated them into his factual finding regarding plaintiff's RFC by limiting plaintiff to work involving simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, requiring only simple work-related decisions, with few, if any workplace changes, involving only occasional

interaction with the public, co-workers, and supervisors, "taking into account a seriously limited ability to deal with work stressors, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability." (A.R. 15-19). The court finds no violation of the treating physician rule.

## **Conclusion**

       For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.

Dated:  September 13, 2012           /s/  Joseph G. Scoville
                                                      United States Magistrate Judge